Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 1, 2004　　　　　　Decided April 20, 2004

No. 03–7105

CATHERINE SCHUCHART AND
VALERIE RHEINSTEIN,
APPELLANTS

v.

LA TABERNA DEL ALABARDERO, INC.,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01166)

————

*Rodney R. Sweetland III* argued the cause and filed the briefs for appellants.

*Daniel R. Lanier* argued the cause and filed the brief for appellee.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: RANDOLPH, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The disposition of this appeal depends on the proper application of District of Columbia common law. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Although the District of Columbia has long recognized the common law tort of invasion of privacy and relied on the Restatement (Second) of Torts' formulation in "determining the appropriate contours of a cause of action for invasion of that right," *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C. 1985); *see* Restatement § 652A (1977), District of Columbia law is "genuinely uncertain," *see Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998), concerning whether, under the constituent tort of intrusion upon seclusion, a business may be held liable when it discloses to a third person its customer's credit card information or details about its patrons' dining habits. Because, under the circumstances, it would be inappropriate for this court to speculate on a matter of "local doctrine," *East v. Graphic Arts Indus. Joint Pension Trust*, 107 F.3d 911, 911 (D.C. Cir. 1997) (quoting *Delahanty v. Hinckley*, 845 F.2d 1069, 1070 (D.C. Cir. 1988)), we certify several questions of law to the District of Columbia Court of Appeals.

This appeal is before the court following the grant of judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). Thus, the facts on appeal are those alleged in the complaint, which must be read in the light most favorable to the non-moving parties, here appellants, granting them all reasonable inferences. *See Henthorn v. Dept. of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994). On January 31, 2003, appellants Catherine Schuchart and Valerie Rheinstein, who are residents and citizens of Virginia, ate lunch at appellee restaurant La Taberna del Alabardero in Washington, D.C. Schuchart paid for the lunch with her personal credit card. On or about February 3, 2003, Taberna provided a copy of Schuchart's credit card receipt to appellants' employer, Mauro Mujica, without appellants' consent. This receipt contained confidential, personal financial information. The dissemination of this information

was highly offensive to them. They were injured by the disclosure of the financial information and the details about their dining habits. Invoking 28 U.S.C. § 1332, they sued appellee Taberna, with each seeking $250,000 in compensatory damages, and $500,000 in punitive damages. Although appellants' complaint generally alleged the tort of invasion of privacy, in opposing Taberna's motion for judgment on the pleadings, appellants simply argued that they had pleaded one of the four invasion of privacy torts, intrusion upon seclusion. The district court ruled that if there was any intrusion into appellants' seclusion, it was perpetrated not by appellee Taberna, but by their employer, who is not named as a defendant, and granted appellee's motion for judgment under Rule 12(c).

Appellants contend on appeal that "[t]he pleadings alone in this case do not foreclose the possibility as a matter of law there was an intrusion into [appellants'] zone [of privacy]," Appellants' Br. at 12, and the district court therefore erred in granting judgment in favor of appellee Taberna, because a Rule 12(c) motion, like a Rule 12(b)(6) motion, should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). First, they maintain their employer, to whom the confidential personal information was provided, and appellee Taberna are jointly liable for the intrusion upon their seclusion. Citing *Leiken v. Wilson*, 445 A.2d 993, 999 (D.C. 1982), for the proposition that any single joint tortfeasor may be sued for the full amount of a plaintiff's injuries, and their motion to disqualify, which argued that a reasonable defense attorney would seek to join appellants' employer as a third party defendant, *see* Fed. R. Civ. P. 14(a), they argue the district court erred in dismissing for failure to sue the proper party. Second, they maintain that the disclosures of both confidential personal financial information and their dining habits fall within the bounds of the tort. They argue that the nature of the Taberna restaurant rebuts any notion that they did not enjoy a zone of privacy while dining there. Appellants also maintain that the district court abused its discretion

in failing to grant them leave to amend their complaint, an issue we do not reach because the need for amendment hinges on whether, under District of Columbia law, appellants have stated a claim for intrusion upon seclusion or another common law tort. Similarly, although appellee Taberna contends on appeal that the complaint fails to state a claim for intrusion upon seclusion because it did not allege sufficient facts to establish the tort's first two elements, consistent with the requirements of Federal Rule of Civil Procedure 8(a), the complaint is sufficient, *see Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004), depending on District of Columbia law, insofar as the elements of intrusion and seclusion are implicit in appellants' claims that Taberna disclosed confidential personal information to their employer without their consent.

The Restatement (Second) of Torts § 652B sets forth three elements for the tort of intrusion upon seclusion: "[1] One who intentionally intrudes, physically or otherwise, [2] upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, [3] if the intrusion would be highly offensive to a reasonable person." The leading case in this jurisdiction on intrusion upon seclusion is *Wolf v. Regardie*, 553 A.2d 1214 (D.C. 1989). In describing the kinds of intrusions this tort seeks to redress, the District of Columbia Court of Appeals in *Wolf* illustrated circumstances where a defendant's liability rested on an investigation or examination that offensively pried into a plaintiff's zone of privacy. For instance, liability could exist for: peeping through windows at a location where the plaintiff secluded herself; opening personal mail; eavesdropping on personal conversations; searching personal belongings without permission; and examining the plaintiff's private bank account. *Id.* at 1217–18. Addressing a claim based on the use of publicly known or accessible information in the preparation of a magazine article that the plaintiff sought to discourage, the District of Columbia Court of Appeals explained:

> This tort [of intrusion upon seclusion] was not created to protect against ... the garnering of information from third parties, and the culling of facts from public records. Gathering information about [the plaintiff] from third parties, "even if pursued using subterfuge and fraud, cannot constitute ... an intrusion upon [the plaintiff's] solitude or seclusion. The Court has found no authority, nor has [the plaintiff] cited any, which suggests the contrary."

*Id.* at 1218 (quoting *Rifkin v. Esquire Publishing*, 8 Media L. Rptr. (BNA) 1384, 1386 (C.D. Cal. 1982)).

Notwithstanding *Wolf*'s guidance that a party requesting information is not subject to tort liability, the opinion does not settle the question of whether liability exists for a third party who discloses information lawfully obtained but which may be impliedly limited to use for only certain purposes, such as to secure payment for a purchase. Although courts applying state common law have found defendants liable for invasion of privacy where they exceeded the scope of a plaintiff's implied limited consent, *see, e.g.*, *O'Brien v. Papa Gino's of America, Inc.*, 780 F.2d 1067, 1072 (1st Cir. 1986) (applying New Hampshire law); *see also* David A. Elder, *The Law of Privacy* § 2:12, at 72 (1991), the states are far from unanimous about whether the intrusion upon seclusion tort encompasses not only wrongful procurement of information, *see, e.g.*, Restatement (Second) of Torts § 652B, cmt. b, illus. 4 (recommending tort liability for a party who uses a forged court order to obtain a plaintiff's bank records), but also its wrongful disclosure (e.g., holding a bank liable for disclosing financial records to a third party not engaging in deceit). *Cf.* Thomas McCarthy, *The Rights of Publicity and Privacy* § 5.10(A)(1) & n.9 (1993). Some courts reject intrusion upon seclusion liability in such circumstances, although they may identify other torts, such as breach of a confidential relationship, that protect against, for instance, the disclosure of information voluntarily given by a plaintiff to the disclosing party. This was the case where a doctor disclosed a birth mother's identity to her child, whom she had given up for adoption decades earlier. *See Humphers v. First Interstate*

*Bank of Or.*, 696 P.2d 527, 532–33 (Or. 1985). Others take the opposite approach, holding disclosing parties liable where their handling of information exceeds the implied limited consent given by the plaintiff. For instance, an employer could be held liable for intrusion upon seclusion where it used its employees' confidential medical information to purchase insurance policies payable to the employer upon an employee's death. *See Rice v. Wal–Mart Stores, Inc.*, 2003 DNH 166, 2003 U.S. Dist. LEXIS 17288 at *9–10 (applying New Hampshire law) (unpublished); *see also Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1008 (N.H. 2003); *Pulla v. Amoco Oil Co.*, 882 F. Supp. 836, 867 (S.D. Iowa 1994), *aff'd in part & rev'd in part on other grounds*, 72 F.3d 648 (8th Cir. 1995) (applying Iowa law). In either approach, the scope of any implied consent may turn on local or general custom as well as the conduct of the parties. *See* Elder, § 2:12 at 68.

In *Wolf*, the District of Columbia Court of Appeals stated that "the acquisition of information is not a requisite element of a § 652B [intrusion upon seclusion] cause of action. Rather, it is the nature of the intrusion which initially fixes liability." 553 A.2d at 1217 (citations omitted). It is conceivable, then, that the disclosure of private information to a third party recipient already in possession of the information may inform whether the disclosing party is liable, because the third party's preexisting state of knowledge may affect the "nature of the intrusion." On the other hand, it is conceivable that, because a plaintiff's legal injury is not limited to harm suffered indirectly as a result of an intrusion but also includes the intrusion itself, a defendant disclosing information without consent should not be shielded from liability merely because the recipient of the information happens already to have come into possession of the same information. *Cf. Sutherland v. Kroger Co.*, 110 S.E. 2d 716, 724 (W. Va. 1959); *Terrell v. Rowsey*, 647 N.E. 2d 662, 669 (Ind. Ct. App. 1995) (Sullivan, J., dissenting in part and concurring in part). In light of the district court proceedings, it appears the effect of appellants' employer's possible prior knowledge of Schuchart's credit card information could become relevant.

Given the differing positions of the states concerning these common law issues, it is unclear what approach the District of Columbia Court of Appeals would endorse. *See Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 956 (D.C. Cir. 2001). This is especially so with respect to appellant Schuchart's claim based on the disclosure of her personal financial information, which is an area that some courts have singled out for especially vigilant protection in light of the vast social cost inflicted by identity theft. *See, e.g.*, *Remsburg*, 816 A.2d at 1008. Further, state courts are not unanimous on the question of whether a restaurant's disclosure of its patrons' dining habits is actionable under the intrusion upon seclusion tort. *Cf. Stessman v. American Black Hawk Broadcasting Co.*, 416 N.W.2d 685, 687 (Iowa 1987). The question of whether businesses are legally bound to protect a customer's privacy interests arising from the payment for goods or services is likely to recur.

Because the degree of protection afforded privacy interests like those at issue is a matter of public importance, *see Richardson*, 270 F.3d at 950; *see also Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 563–64 (D.C. Cir. 1993), in which the District of Columbia has a substantial interest in balancing the individual and societal interests, *see Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 884 (D.C. Cir. 1985), and involves likely recurring questions of local common law that are appropriately resolved by the District of Columbia's highest court, *see Richardson*, 270 F.3d at 950; *Delahanty*, 845 F.2d at 1070, the court exercises its discretion, *see Joy*, 999 F.2d at 563 (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)), to certify, pursuant to D.C. Code § 11–723, the following questions of law to the District of Columbia Court of Appeals: Under District of Columbia law, does a customer state a claim for intrusion upon seclusion, or another common law tort, where (1) a business discloses without consent a customer's personal credit card information to a third party not involved in processing payment (specifically, the customer's employer), and does the result differ if the credit card information is disclosed to a party who already possesses that information, and (2) a restaurant discloses to a third party the

dining habits of a patron without the patron's consent? An appropriate order will issue.